Richardson, Ch. J.,
delivered the opinion of the court:
The claimant is executor of the will of Parley C. Holt, who lived and died at Maumee City, Lucas County, Ohio, where he had been a fourth-class jmstmaster, and had become entitled to a readjustment of his salary under the Act of March 3, 1893 (ch. 119, 22 Stat. L., 487).
In October, Í8S3, the testator’s widow applied to the Post-Office Department fora readjustment of his salary and for the payment to her of the amount found due him.
In November, 1884, the claimant in like manner applied to the Department for such readjustment and for payment to him, as executor, of the amount due.
In 1880 the readjustment was made, and the sum of $369.20 was found due thereon to the testator, and in November of that year the same was paid to said widow, and nothing has been paid to the claimant.
But for the ingenious brief on the part of the defendants and the argument thereon, we should be at a loss to see what defense could be set up to his claim.
The brief, after stating the facts, proceeds thus:
“From these facts it appears that the Post-Office Department and Treasury Department regarded the widow as the proper claimant in the case. In this they were justified by the statutes of Ohio, which prefer the widow for administration, those officers having had no knowledge at the time her application was made nor proof thereafter that an executor badbeen appointed, audit appearing by the alleged executor’s application and subsequent correspondence that the alleged executor resided in Illinois.
“ Letters testamentary are now for the first time offered in evidence.
*59 “ If claimant was a citizen of Illinois at tlie time of Ms appointment, or removed there afterward, and if the will authorized him to act without bond, nevertheless he had no right, so far as creditors or citizens of Ohio were concerned, to act as executor without bond. But whether the probate court of Lucas County, Ohio, did or did not exceed its jurisdiction, we submit that the payment of the claim to the widow was a valid discharge of the liability of the defendants in this matter. •
“ The United States are not concerned in paying the debts of their creditors; and they are not bound to recognize the local laws of the States when they conflict with the administration of the financial affairs of the Government. It has been the practice of the Treasury officials to pay small claims to widows and minor children without administration. Obviously in such cases there might be creditors who, under local laws, would be entitled to collect the claims in preference to the widow or minors. Nevertheless, we pay the small debts due on such claims to the latter. In making such payments there has always been a possibility of an executor or administrator coming in to demand the payment of the debt after such payments; nevertheless the practice continues to pay these small claims to the widow or the minor children.
“This practice has so long obtained, that we submit it has the force of custom, and as such has become a part of the financial law of the United States. And why should not this practice be good in law 1 It obtains only in the case of small claims, tice What real equity is there in depriving by will or administration the widow and children of the means to provide food and shelter for a few months after the death of the father"? What difference does it make to creditors that these small payments are made to the widow and children if the estate be solvent; and, if insolvent, would it not be harsh in the extreme to give their only substance to creditors ? Our homestead laws are founded on the principle we have contended for. It is the same principle which obtains in this class of cases in the Treasury Department; under it we recognize the widow and minor children as the only lawful claimants of these small debts, and all creditors, executors, and administrators have notice of that practice — notice that the United states does not submit to be sued for debts so paid.”
The first objection raised by the brief relates to the validity of the appointment of thé claimant as executor.
It is alleged that by the statutes of Ohio the widow should have been appointed to administer on the estate. We find the following to he the statutes on the subject as they appear in the Kevised Statutes of Ohio, from which it will be seen that they apply only to the estates of persons who die intestate, and *60 have no application to the appointment of executors, who are named in wills by the testators themselves.
“Seo. 6006. Administration of the estate of an intestate shall be granted to some one or more of the persons hereinafter mentioned ; and they be respectively entitled thereto in the following order, to wit:
_ “ First. The husband or widoAv of the deceased, or next of bin, or both,»as the court may think fit; and if they do not voluntarily either take or renounce the administration, they shall, if resident within the county, be cited by the court or notified by a party in interest for that purpose.
“Second. If the persons so entitled to administration are incompetent, or evidently unsuitable for the discharge of the trust, or if they neglect, without any sufficient cause, to take administration of the estate, the court shall commit it to one or more of the principal creditors, if there be any competent and willing to undertake the trust.” # * * [1885, May 2; 82 v., 223, Rev. Stat., 1880; 38 v., 146; (S. & C.)].
Another defense is that the executor was living in Illinois, and could not have acted as such without bonds “ so far as creditors or citizens of Ohio were concerned.”
We know of no law in that State or elsewhere by which testators are prohibited from naming nonresidents as executors or from executors acting as such when they become nonresidents after appointment; and as to their appointment without bonds the Ohio statutes provide as follows :
“Sec. 5995. When any will sliallbe duly proved and allowed, the probate court shall issue letters testamentary theron to the executor, if any be named therein, if he is legally competent, and if he shall accept the trust, and shall give bond, if bond required, to disharge the same. Otherwise the court shall grant letters of administration on the estate, as hereinafter provided. (38 v. 146, sec. 2; S. & C., 567.)
“Sec. 5996. * * * When, by the terms of any last will, the testator shall express a wish that his executor may execute the same without giving bond, the court, admitting the will to probate, may, at its discretion, grant letters testamentary with or without bond, as may seem expedient, and, when granted without bond, may, at any subsequent period upon the application of any party interested, require bond to be given, and in default of his giving the same he may be removed.” [59 v. 98, sec.3; 54 v. 25, sec.2; S. & C., 614 (S.,— ,C. 567); S. & S., 350.]
We are unable to see what creditors have to do with the appointment of an executor, unless it be to object to the individual named on account of such unfitness as would endanger the payment of their claims.
*61 It is further objected that the claimant ñled no proof in the Post-Office Department of his appointment as executor. But he did file an application for this readjustment declaring himself to be executor, and no proof of the tact seems to have been called for by the Department. We do not think he was obliged to file such proof unless it was required, since the Department might be willing to act on his declarations. He certainly did enough to give notice and put the Department on its guard against paying to anybody else.
A still further defense is set up that it has long been the practice of the Department to pay small claims to widows or children without an administrator.
We understand such practice, so far as it has been general, is to pay small claims, not exceeding $100, to the widow or children, in order to avoid the trouble, expense and delay of taking out letters of administration or letters testamentary, when there is no other estate to be administered. In both particulars this practice did not justify the defendants in paying this money to the widow. The claim is for more than $100, there was other estate, the will had been proved, and an executor had been appointed, and all the expenses incident thereto had been incurred. Of the fact of the claimant’s appointment the Department had been notified nearly a year before the money was paid to the widow.
The practice is a very commendable one, as poor claimants are thus protected from much expense which they could illy afford, and the defendants rarely suffer losses on account of it.
The title to a testator’s personal chattels, stock, choses in action, and personal estate generally vest in his executor, whose duty it is to sell and reduce to money all but the choses in action, which he must collect by suit or otherwise, except such, if any, as are specifically bequeathed by will.
A widow, as such, or legatee, has no title to any specific property, unless it be given to her by the will, or is allowed to her by the court, or is transferred to her by the executor. Frequently an executor does transfer to parties interested, as widow, legatees, or otherwise, specific personal property with the consent of all parties, to be accounted for on final settlement, and such practice is often convenient, proper, and satisfactory; but that was not done in this case.
*62 . The defendants had due notice of the rightful claimant, and the payment of the money to the widow was in their own ■wrong.
Judgment must be entered for the claimant in the sum of $369.20.